UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JERRILL M. CREDLE,

                      Plaintiff,

v.                                                              1:16-CV-0312
                                                                 (GTS/WBC)
COMMISSIONER OF SOCIAL SECURITY,

                      Defendant.
_____

APPEARANCES:                                     OF COUNSEL:

OFFICE OF PETER MARGOLIUS           PETER M. MARGOLIUS, ESQ.
  Counsel for Plaintiff
7 Howard St.
Catskill, NY 12414

U.S. SOCIAL SECURITY ADMIN.            JOSHUA KERSHNER, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

## MEMORANDUM-DECISION and ORDER

      This matter was referred to me, for all proceedings and entry of a final judgment, pursuant to the Social Security Pilot Program, N.D.N.Y. General Order No. 18, and in accordance with the provisions of 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 73.1 and the consent of the parties. (Dkt. Nos. #, #.).

      Currently before the Court, in this Social Security action filed by Jerrill Credle ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-motions for judgment on the pleadings. (Dkt. Nos. 9, 14.) For the reasons set forth

below, it is ordered that Plaintiff's motion be granted, in the extent it seeks remand under Sentence Four of 42 U.S.C. § 405(g), and Defendant's motion is denied.

## I. RELEVANT BACKGROUND

### A. Factual Background

Plaintiff was born in 1979. (T. 78.) He received a GED. (T. 205.) Generally, Plaintiff's alleged disability consists of post-traumatic stress disorder ("PTSD"), personality disorder, and degenerative disc disease. (T. 204.) His alleged disability onset date is May 27, 2014. (T. 76.) His date last insured is December 31, 2018. (*Id.*) He previously worked as a car washer, cook, in security, and factory worker. (T. 205.)

### B. Procedural History

On August 12, 2014, Plaintiff applied for a period of Disability Insurance Benefits ("SSD") under Title II, and Supplemental Security Income ("SSI") under Title XVI, of the Social Security Act. (T. 76.) Plaintiff's applications were initially denied, after which he timely requested a hearing before an Administrative Law Judge ("the ALJ"). On April 1, 2015 and again on May 19, 2015, Plaintiff appeared before the ALJ, Terence Farrell. (T. 31-61, 62-75.) On July 1, 2015, ALJ Farrell issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 13-30.) On January 12, 2016, the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1-6.) Thereafter, Plaintiff timely sought judicial review in this Court.

### C. The ALJ's Decision

Generally, in his decision, the ALJ made the following five findings of fact and conclusions of law. (T. 18-26.) First, the ALJ found that Plaintiff met the insured status

2

requirements through December 31, 2018 and Plaintiff had not engaged in substantial gainful activity since May 27, 2014. (T. 18.) Second, the ALJ found that Plaintiff had the severe impairments of degenerative disc disease/degenerative joint disease of the cervical, thoracic, and lumbar spine; lumbar radiculopathy; right shoulder pain; status post left shoulder surgery; bipolar disorder; PTSD; social phobia; and cannabis abuse. (*Id.*) Third, the ALJ found that Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1. (T. 20-21.) Fourth, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work with additional non-exertional impairments. (T. 21-22.)[1] The ALJ determined that Plaintiff was limited to work with only occasional, brief, and superficial interactions with coworkers and supervisors. (T. 21.) The ALJ determined Plaintiff could occasionally lift, carry, push, and pull 20 pounds; frequently lift, carry, push, and pull 10 pounds; stand for eight hours in a workday with normal breaks, with standing limited to one hour at a time, after which he would need to sit for a few minutes before resuming standing; walk for eight hours in a workday; sit for eight hours in a workday with normal breaks with sitting limited to about one hour at a time, after which he would need to stand or walk a few minutes before resuming sitting; frequently, but not continuously, reach overhead with no limitation in reaching in other directions; occasionally climb ladders, ropes and scaffolds; frequently climb stairs and

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time. 20 C.F.R. §§ 404.1567(b), 416.967(b).

ramps; could never be exposed to unprotected heights; and could frequently be exposed to moving mechanical parts and vibrations. (T. 21-22.) Fifth, the ALJ determined that Plaintiff was incapable of performing his past relevant work; however, there were jobs that existed in significant numbers in the national economy Plaintiff could perform. (T. 25-26.)

## II. THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A. Plaintiff's Arguments

Plaintiff makes one argument in support of his motion for judgment on the pleadings. Plaintiff argues the new and material evidence submitted to the AC warrants changing the ALJ's decision. (Dkt. No. 9 at 3-5 [Pl.'s Mem. of Law].)

### B. Defendant's Arguments

In response, Defendant makes one argument. Defendant argues the ALJ's RFC determination was supported by substantial evidence; specifically, 1) the new evidence did not substantially contradict the ALJ's RFC and step five findings, 2) the ALJ's decision was consistent with the evidence before him at the time of his decision, 3) the AC correctly found that the new opinion did not render the ALJ's decision contrary to the weight of the evidence of record. (Dkt. No. 14 at 7-15 [Def.'s Mem. of Law].)

## III. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were

not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner],

5

even if it might justifiably have reached a different result upon a de novo review."

*Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

### IV. ANALYSIS

Plaintiff argues that the new and material evidence submitted to the AC warrants changing the ALJ's decision. (Dkt. No. 9 at 3-5 [Pl.'s Mem. of Law].) Specifically, Plaintiff argues that the new evidence submitted to the AC, a medical source statement provided by Plaintiff's treating mental health counselor, indicated that Plaintiff had greater limitations in the area of social functioning than accounted for in the ALJ's RFC determination. (*Id.* at 4.) Because Plaintiff only questions a specific aspect of the ALJ's mental RFC determination the medical evidence pertaining to Plaintiff's physical RFC and the ALJ's physical RFC determination will not be discussed herein.

In formulating his mental RFC determination the ALJ relied on the medical opinions provided by Plaintiff's mental health counselor, Courtney Schaad, M.Ed./M.A. and consultative examiner, Seth Rigberg, Ph.D. (T. 24.)

On November 19, 2014, Dr. Rigberg examined Plaintiff and provided a medical source statement. (T. 405-409.) Dr. Rigberg opined that Plaintiff had mild limitations following and understanding simple directions and instructions, and moderate limitations performing simple tasks independently. (T. 408.) Further, he opined that Plaintiff had mild limitations maintaining a regular schedule and learning new tasks. (*Id.*) He opined Plaintiff had marked limitations performing complex tasks independently or under supervision. (*Id.*) Dr. Rigberg stated Plaintiff had mild to moderate limitations making appropriate decisions depending on the circumstances; mild to moderate limitations relating adequately with others depending on the situations; and moderate limitations becoming accustomed to changes in routine. (*Id.*)

In February of 2015, Ms. Schaad completed a medical source statement. (T. 515-517.) Therein, Ms. Schaad opined that Plaintiff had no limitations in his ability to: understand and remember simple instructions; carry out simple instructions; and make judgments on simple work related decisions. (T. 515.)[2] She opined Plaintiff would have mild limitations in his ability to: understand and remember complex instructions; carry out complex instructions; and make judgments on complex work-related decisions. (*Id.*)

---

[2] The form completed by Ms. Schaad contained the following definitions. None means limitations are absent or minimal, if limitations are present they are transient and/or expected reactions to psychological stresses. (T. 515.) Mild is a slight limitation in the area, but the individual can generally function well. (*Id.*) Moderate is more than a slight limitation in the area, but the individual is still able to function satisfactorily. (*Id.*) Marked is a serious limitation in the area, there is a substantial loss in the ability to effectively function. (*Id.*) Extreme is a major limitation in the area, there is no useful ability to function in the area. (*Id.*)

7

Ms. Schaad wrote, "[d]ue to [Plaintiff's] PTSD symptoms as well as [his] level of stress and paranoia [he] has difficulty with attention, concentration and memory." (*Id.*)

In terms of social functioning, Ms. Schaad opined that Plaintiff had no limitations in his ability to respond appropriately to usual work situations and to changes in a routine work setting. (T. 516.) She opined Plaintiff had mild limitations in his ability to interact appropriately with the public. (*Id.*) She opined Plaintiff had moderate limitations in his ability to: interact appropriately with supervisors and interact appropriately with coworkers. (*Id.*) Ms. Schaad wrote, "[d]ue to [Plaintiff's] active PTSD symptoms such as hyperparanoia and intrusive memories as well as level of paranoia [he] has difficulty with interpersonal relationships. [He] has had difficulty obtaining and keeping employment." (*Id.*)

The ALJ afforded Ms. Schaad's February 2015 opinion "great weight." (T. 24.) The ALJ reasoned that Ms. Schaad was a treating source and was "best able to provide a detailed longitudinal picture of [Plaintiff's] abilities and limitations." (*Id.*) The ALJ afforded Dr. Rigberg's opinion "less weight" reasoning he was not a treating source and his opinion was based on a one time examination. (*Id.*)

On August 12, 2015, one month after the ALJ's written decision, Ms. Schaad completed another medical source statement. (T. 568-567.) This statement was submitted with Plaintiff's request for review to the AC. (T. 269-270.) In her August 2015 opinion, Ms. Schaad stated that Plaintiff had mild limitations understanding and remembering simple tasks and no limitation carrying out simple instructions. (T. 568.) She opined Plaintiff had moderate limitations in his ability to understand, remember, and carry out complex tasks. (*Id.*)

In the area of social functioning Ms. Schaad opined that Plaintiff had marked limitations in all areas: interacting appropriately with the public; interacting appropriately with supervisors; interacting appropriately with coworkers; and responding appropriately to usual work situations and changes in a routine work setting. (T. 569.) Ms. Schaad wrote, as she did in her previous statement, "[d]ue to [Plaintiff's] active PTSD symptoms, such as hyperparanoia and intrusive memories as well [as] his paranoia and aggression [Plaintiff] has difficulty with interpersonal relationships and difficulty obtaining and keeping employment." (*Id.*) To that narrative, Ms. Schaad added that Plaintiff's symptoms of hypervigilance, mistrust, agitation, and psychosomatic symptoms, increased since April 2015. (*Id.*) She indicated that Plaintiff reported several instances of paranoia and conflict with family, friends, and doctors. (*Id.*) Ms. Schaad stated that Plaintiff's low frustration level and anger would make it difficult for him to interact appropriately with others and be able to manage stress and change. (*Id.*)

On January 12, 2016, the AC denied Plaintiff's request for review. (T. 1-5.) The AC acknowledged receipt of the August 2015 statement and concluded that the ALJ's determination was not contrary to the weight of the evidence and the new statement did not provide a basis for changing the ALJ's decision. (T. 2.) The AC added the August 2015 statement to the record. (T. 5.) "[N]ew evidence submitted to the [AC] following the ALJ's decision becomes part of the administrative record for judicial review when the [AC] denies review of the ALJ's decision." *Perez v. Chater,* 77 F.3d 41, 45 (2d Cir.1996).

Once evidence is added to the record, the AC must then consider the entire record, including the new evidence, and review a case if the "administrative law judge's

9

action, findings, or conclusion is contrary to the weight of the evidence currently of record." 20 C.F.R. §§ 404.970(b), 416.1470(b). If the AC denies review of a case, the ALJ's decision, and not the AC's decision, is the final agency decision. *See Perez,* 77 F.3d at 44. When the AC denies review in a case, the review focuses on the ALJ's decision. *Lesterhuis v. Colvin*, 805 F.3d 83, 87 (2d Cir. 2015); *see* 42 U.S.C. § 405(g) ("Any individual, after any *final decision* of the Commissioner ..., may obtain a review of such decision by a civil action....").

A district court's review is based on the entire administrative record, including any new evidence submitted to the AC following the ALJ's decision. *See Perez,* 77 F.3d at 45. Thus, as in this case, when the AC denies review after considering new evidence, the court "simply review[s] the entire administrative record, which includes the new evidence, and determine[s], as in every case, whether there is substantial evidence to support the decision of the [Commissioner]." *Id.* at 46; *Lesterhuis*, 805 F.3d at 87.

In *Lesterhuis* the plaintiff provided an opinion from a treating physician to the AC, who in turn denied review. *Lesterhuis*, 805 F.3d at 86. The Court in *Lesterhuis* reviewed the entire administrative record and determined that the ALJ's decision was not supported by substantial evidence in the record because the treating physician provided an opinion that was 1) generally entitled to controlling weight, 2) likely dispositive on the issue of disability, and 3) uncontroverted by other evidence in the record. *Id.* at 88. Applying the principles in *Lesterhuis* here, remand is necessary for an evaluation of Ms. Schaad's August 2015 opinion.

To be sure, Ms. Schaad was Plaintiff's treating mental health care provider, but she was not a "treating source" under the Regulations. A "treating source" is defined as

10

the plaintiff's "own physician, psychologist, or other acceptable medical source who provides [plaintiff], or has provided [plaintiff], with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [plaintiff]." 20 C.F.R. §§ 404.1502, 416.902 (2013). There are five categories of "acceptable medical sources." *Id.* at §§ 404.1513(a), 416.913(a) (2013). Mental health counselors are not included within those categories. However, in weighing opinion evidence in the record, the ALJ provided Ms. Schaad's February 2015 opinion "great weight" because she was a "treating source" and was able to provide a detailed longitudinal picture of Plaintiff's abilities and limitations. (T. 24.) Therefore, although Ms. Schaad may not have been a "treating source" under the Regulations, the ALJ nonetheless treated her as such in affording her February 2015 opinion weight.

Only a very narrow aspect of Ms. Schaad's August 2015 opinion is contrary to the ALJ's RFC determination. Ms. Schaad's August 2015 opinion regarding Plaintiff's ability to understand, remember and carry out instructions is consistent with the ALJ's RFC determination that Plaintiff could perform work as a box inspector (DOT 762.687-014), a garnisher (DOT 524.687-014), and an assembly machine operator (DOT 692.686-010). (T. 26.) Those occupations have a specific vocational preparation ("SVP") of 1 or 2 which is consistent with simple, unskilled work which would not require the ability to perform complex tasks. *See* SSR 00-4p, 2000 WL 1898704, at *3 (unskilled work corresponds to an SVP of 1-2). Therefore, Ms. Schaad's August 2015 opinion regarding Plaintiff's ability to understand, remember and carry out instructions is not contrary to the determination that Plaintiff could perform simple, unskilled work.

11

Ms. Schaad's August 2015 opinion regarding Plaintiff's ability to interact appropriately with supervision, co-workers, and the public, as well as respond to changes in routine work setting is contrary to the ALJ's RFC determination. The ALJ limited Plaintiff to "occasional, brief, and superficial interactions with co-workers and supervisors." (T. 21.) The ALJ makes no mention of Plaintiff's ability to interaction with the public. (*Id.*) Ms. Schaad's opinion, that Plaintiff had marked limitations in these areas, clearly conflicts with the ALJ's RFC determination.

Ms. Schaad's August 2015 opinion regarding Plaintiff's social functioning is controverted by Dr. Rigberg's opinion. Dr. Rigberg opined that Plaintiff had "mild to moderate" limitations relating adequately with others and "moderate" limitations becoming accustomed to a change in routine. (T. 408.) However, the ALJ afforded Dr. Rigberg's opinion "less weight" reasoning he was not a treating source and the opinion was based on a one-time examination. (T. 24.)

Ultimately the new evidence contradicted the ALJ's determination that Plaintiff could have "occasional, brief, and superficial interactions with coworkers and supervisors" and these findings came from the same treating source whom the ALJ relied on in determining his RFC.

To be sure, there may be reasons for the ALJ to discount or reject Ms. Schaad's August 2015 opinion. As Defendant asserts, Ms. Schaad is a non-acceptable medical source and the second opinion was obtained after the ALJ's unfavorable determination. (Dkt. No. 14 at 8-10 [Def.'s Mem. of Law].) In addition, Ms. Schaad opined that Plaintiff's social limitations increased between April 2015 and August 2015. (T. 569.) However, those reasons must be considered by the ALJ, not by this Court. On remand

the ALJ might conclude that Ms. Schaad's new opinion is not entitled to controlling weight or any weight, but "that determination should be made by the agency in the first instance, and we should refrain from affirm[ing] an administrative action on grounds different from those considered by the agency." *Lesterhuis*, 805 F.3d at 88 (quoting *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (internal quotation omitted); *see also Kelly v. Colvin*, No. 3:15-CV-775, 2016 WL 5374113, at *10 (N.D.N.Y. Sept. 26, 2016) (remanding where new evidence provided to the AC which contradicted the ALJ's RFC determination); *see also Ennis v. Colvin*, No. 14-CV-6587, 2016 WL 284550, at *3 (W.D.N.Y. Jan. 25, 2016) ("While the government may be correct that reasons may exist for discounting or rejecting [the source's] opinion, those reasons must be considered by the ALJ or the Appeals Council in the first instance, not by this Court."). Therefore, although there are reasons that the ALJ may ultimately reject Ms. Schaad's new opinion, those reasons are to be considered by the ALJ, not this Court.

Defendant argues that any error in including Ms. Schaad's August 2015 social limitations would be harmless error because the occupations provided by the vocational expert ("VE") do not require any interaction with the public. (Dkt. No. 14 at 9 [Def.'s Mem. of Law].) To be sure, the occupations of box inspector, garnisher, and assembly machine operator to not require interaction with the public. (DOT 762.687-014, 524.687-014, 692.686-010.) However, common sense dictates that all occupations require some degree of interaction with a supervisor and/or co-workers. That degree of interaction is not apparent from the definitions in the DOT and would require the testimony of a VE.

Should the ALJ adopt Ms. Schaad's August 2015 limitations, VE testimony would be necessary to determine the impact a "marked" limitation in social functioning and a "marked" limitation in responding appropriately to usual work changes would have on the occupational base of unskilled light work. Although the DOT indicates that the occupations provided by the VE do not require interaction with the public, there still remains the question of how a limitation in interaction with supervisors and co-workers, and marked limitation in responding appropriately to workplace changes, affects the occupational base.

Of note, at the hearing, Plaintiff's counsel asked the VE if a person with "moderate" limitations accepting instructions and responding appropriately to criticism from supervisors would be able to sustain employment. (T. 73.) Plaintiff's counsel stated that she defined "moderate" the same as "occasionally," up to one-third of the workday. (*Id.*) The VE answered that a plaintiff with a moderate limitation to accepting instructions and responding appropriately to criticism from supervisors would not be able to sustain employment. (*Id.*) Despite the VE's testimony, the ALJ concluded that Plaintiff was limited to "occasional" interactions with supervisors and co-workers and he could perform the occupations identified by the VE. (T. 25-26.) There appears to be a conflict between the VE's testimony (that a plaintiff who could not respond appropriately to criticism from a supervisor up to one-third of the time would be precluded from sustainable employment) and the ALJ's RFC determination that Plaintiff could have occasional interactions with supervisors. As this matter is being remanded for an evaluation of Ms. Schaad's August 2015 opinion, it would be prudent, should the ALJ

not accept her new opinion on remand, to nonetheless obtain VE testimony to clarify this conflict.

In sum, remand is required so that the ALJ may evaluate the August 2015 opinion of Ms. Schaad. Although Ms. Schaad is not an acceptable medical source under the Regulations, the ALJ treated her as such and provided her February 2015 opinion "great weight" based on her treating relationship and longitudinal understanding of Plaintiff's mental health treatment. The August 2015 opinion regarding Plaintiff's social limitations contradict the ALJ's RFC determination. Ms. Schaad's August 2015 opinion is inconsistent with Dr. Rigberg's opinion; however, the ALJ afforded his opinion "less weight." Although reasons exist for discounting Ms. Schaad's August 2015 opinion, those reasons must be considered by the ALJ, not this Court. Therefore, the matter is remanded for an evaluation of Ms. Schaad's August 2015 opinion.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No.9) is **GRANTED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 14) is **DENIED**; and it is further

**ORDERED** that this matter is **REMANDED** to Defendant, pursuant to 42 U.S.C. § 405(g), for further proceedings consistent with this Decision and Order.

Dated: May 1, 2017

_____
William B. Mitchell Carter
U.S. Magistrate Judge

15